In our last case, United States v. Richardson. I'm Larry Economist. I represent Demeco Richardson, Your Honors. This case, there was some comment in the last case, which I thought was a little bit somewhat appropriate to the argument in this case. In this case, the district court judge basically focused on recidivism and took a Level 6 guideline case to a Level 32 case from 31 to 40 months to 211 months, based on the procedural aspect of enhancement of the crime based on 4A13 and 5A13 for being a de facto criminal career offender. The problem is she got it wrong, because under United States v. Simmons, she wasn't entitled to do that, because the prior convictions that Demeco Richardson had did not qualify as providing more than one year maximum sentence for any of those offenses. But don't we have another alternative sentence case? We do have an alternative sentence, and that's the whole basis of this case, and that's the basis of this appeal. I think the alternative basis, the 3A factors that the court went through, were talismanic. I don't think she did enough to justify that sentence. I think she basically was just mopping up after she had focused her entire attention on the enhancement where she got it wrong under the guidelines. Then she went not to 18 lines, as you asked the prior counsel, Your Honor, but went to 12 lines of commentary, and basically said, separately considering the factors, and she ticked off the factors, and then said, as they specifically apply to your defense background and your history of defenses at issue today, etc., that's basically all she said to justify that alternative basis. Now, what she said basically in those 12 lines could be applied to any drug dealing case in any jurisdiction in the United States to support alternative basis. What she said in those 12 lines could be used to have supported a downward departure. What she said in those 12 lines can't be- But we don't take those in a vacuum. That comes at the end of a sentencing hearing. That's true. She knows, and she adopts a report and finds it credible, and she's listened to argument, and she's talked about stuff she's concerned about. Yes, Your Honor, but the only thing she talked about that she was concerned about was very troubling criminal history, no significant work history, which goes to the issue of the career criminal issue, having shown no intention of changing his ways, which goes to that specific issue of being a career offender, not deterred, which goes to the same issue of not being a career- But just because it goes to that, those are still factors to look at, though. Yes, Your Honor, but one of the critical things in the PSR and one of the critical things argued to the court in terms of the individualized assessment of this particular defendant was his medical condition. Two heart attacks, he's age 33, a stint- And she was clearly aware of all that, wasn't she? She was aware of it, but she doesn't articulate in any fashion in the alternative sentencing. All she states in the alternative sentencing is she ticks off the factors and says, well- No, but what if she had said on that, if she had said, let's just say the heart condition, I know you have a heart condition, but under 3553A, she makes that same statement. She just adds, I know you have a heart condition. Would you be satisfied then? No. No, I wouldn't. I didn't think you would, but what if we know that she knows that, and she knows that, and she gives that- She does acknowledge at Joint Appendix 42 that he had a heart attack, a cocaine-induced heart attack seven years ago and was nearly killed. Yeah. He's 100% disabled. My hypothetical was not just 19 lines for the alternative conclusion. It was 19 lines for the whole procedure, the sentence that incorrectly calculated the sentencing guidelines. So under my hypothetical, there was none of this previous analysis by a district court. Well, Your Honor- That's why it doesn't quite work for you. And that point's well taken, Your Honor, of course. The point is, I mean, in this particular- I mean, is that- If your point is- Yes, Your Honor. That a district court should not be allowed to just go in and either not make a guideline calculation or just clearly just look at it and don't say much about it, but really this hypothetical, nothing about it, and just say, but I've got Savignon Matute, and I'm relying on that, then you would say that would be an incorrect application of the law and probably court precedent, wouldn't you say that? Yes, Your Honor. That the judge could not do that. I would say that. Right. But, Your Honor, I mean, I think, you know, every record obviously speaks for itself. They're all different. In this particular record, I mean, this wasn't just a fellow who had some heart trouble. He had two heart attacks. He had a stent. He had coronary vessel disease. He had a bypass surgery. He was medically, according to his doctor, 100% disabled because of his heart condition. The court's only reference to that was, your points are well taken, Mr. Defense Attorney. Your client ingested a bag of- But she didn't have to answer everything and rebut every sentence of something that a defendant or any lawyer on either side says. Do you think? No, Your Honor. I don't think that. I think that- But you also didn't just say, your point's well taken, or whatever you, however you couched it there. She said you've learned nothing from your own troubles with the law and with your health as a result of your drug use. Well, she does say that, Your Honor. And she does say, you know, that I know about your heart condition, but your doctor told you to stop doing drugs. But you tried to ingest a whole bag of drugs, knowing you had a heart condition. I mean, can you really seriously make an argument that this judge wasn't aware of and did not take into account his heart condition? She wasn't flippant. She just didn't say thank you. She talked about it. Well, the only evidence that the gentleman had used drugs was that he had ingested some drugs to try to avoid- Well, that's a different question, though. She's talking about in that terms he was ingesting drugs, and that was contrary to his doctor's advice because of his heart. Correct? She made some comment about it. Yes, Your Honor. Yes. I mean, if the court's position is that, you know, the judge can focus in district court on a guideline aspect that is erroneous, and then basically just mop up by simply reciting the 3553 factors- But it's erroneous for what purpose? It's erroneous for a guideline calculation, or it's erroneous that the facts don't exist and her awareness of the facts doesn't exist? I mean- I think it's procedurally and substantively erroneous. She basically came to a figure of months based specifically on the guidelines, based specifically on enhancement, based specifically on that 4A13 and 5A13 applying. And then she says, well, you know, is she saying I would have come to exactly those same months- But isn't it true that our president requires her to do just that? You didn't require her to do the- I mean, the Supreme Court said- Yes, it does. We said you got to do the guideline calculation first. Yes, it does. It does require- If she hadn't done that first, and she said, I've gone through the 3553A factors, and I now decide this, and now I'm going to do the guidelines, wouldn't you be here arguing that she's already predetermined, and she's just getting to a point under the guidelines? I probably would, Your Honor, but- Honestly, I think you would. Well, I can argue a lot of things, Your Honor, so I don't know if that's going to be that salient here. But the issue- I mean, the fact is that when she got down to mopping up, so to speak, and reciting the 3553A factors, the only reference she made to his heart condition was in the need to provide treatment. She says that as the final clause. But that- I mean, that relates to the specific factor that sets out the treatment can be vocational, educational, rehabilitative, and or medical. I mean, how can Your Honors look at that and say that she's articulated specifically and addressed his individualized condition of his heart condition? Not just a heart condition, but a series of medical problems that he has. I mean, this gentleman, frankly, is in a medical facility right now. He's not even in federal prison because they've already transferred him. He's already had another heart operation. I mean, how can the court look at that and say, well, you know, we're satisfied that if this case went back to Judge Flanagan, that she would come to exactly the same conclusion? She says so. Well, she says that she would- that the 3553 factors support the enhancement that she believed was- she was able to do substantively and procedurally that she was incorrect about. She wasn't able to do that. She picked a number out that the guidelines gave her. She picked a number for the months that the guidelines gave her. Now, had she not known that she could do that, would she have picked that guideline number out or would it have been five months less? I mean, if it's not- if the court's not certain about it, she'd send it back to let her articulate or- and determine. Maybe she would be five months less based on- if she knew that she didn't have the authority to do what she did. I don't know whether she would do the same thing. I don't think that under this case, under the record here, that you can be certain that she would. Now, I think certainty is what you need, I believe, in terms of the harmless error standard in order not to send it back, at least to be clarified. I mean, the point- the fact is the court spent 99 percent of her time in this case dealing with the issue of recidivism and dealing with the issue that the career de facto enhancement applied. And that that specifically gave her the specific quantifiable enhancement that she applied. Would she have come to that same conclusion if she knew that she was substantially incorrect, that she couldn't, under Simmons, provide that 211 months? I don't think the record shows that- I don't think you can be certain of that. And five months less of a prison sentence, or frankly one month less of a prison sentence for a guy who's got severe heart problems and may not live out his sentence and is sitting in a medical facility, is worth sending the case back and just seeing if that is in fact what she did mean. It seems to me like you can read it that way, but you can also- it's also ambiguous. You can also read it as, I gave him the 211 months because I believe I have the authority to do that. I believe the 3553 factors support that guideline enhancement. I think you can read it that way. And I think that leaves some room for ambiguity in terms of what she would have done if she knew that she could not enhance that to that specific level under the guidelines. And unless you have any questions, I've only got 35 seconds left. I'll just reserve the rest of mine for rebuttal. Thank you. Good morning, Your Honors. My name is Yvonne Watford McKinney. I represent the United States. And Your Honor, in this case, we're arguing two things. Number one, that the court was procedurally correct. But that even if the court was not procedurally correct in its upper departure and in its consideration of the defendant as a de facto career offender, it certainly did impose an alternative sentence. And it did so quite specifically and expressly. Here, the court considered under 4A1.3 whether the defendant's criminal history category substantially underrepresented the seriousness of his criminal history or the likelihood that he would commit further crimes. And the court concluded that it did. And the court spent a great deal of time in the beginning of the sentencing hearing doing a chronology of the defendant's prior criminal history. Multiple drug convictions. The court did talk about his heart condition. But in the context that his heart condition didn't deter him from ingesting drugs. That he had continued on a path of criminality that he showed no intention of changing his ways. And so the court considered all of the drug convictions for which the defendant could not be considered a career offender. But said that the conduct underlying those convictions can be considered. And that's what the court did. And when the court did that, it arrived at an upward departure of 151 months on count one. Of course, count two, there was a mandatory 60-month sentence imposed. But then the court said that specifically and separately, I would impose the same thing under the 3553A sentencing factors. And of course, as I indicated, the court had gone through a lengthy explanation of why it was concerned about this defendant's troubling record. Also spoke about his insignificant work history. His actions over what amounted to a 13-year period. Where he racked up at least eight prior drug convictions as well as other convictions. There was some violence there. Court indicated that the defendant was emboldened by previous periods of incarceration where he received lenient treatment. And the court concluded that under 3553A, it would impose the very same sentence. So we believe that the sentence imposed by the district court was procedurally correct. But certainly, it was substantively correct. If the court has any questions, I'd be glad to answer. I don't think we do. Thank you very much.  Do you have any more rebuttals, sir? Your Honor, unless you have any questions, I think it's a pretty straightforward case. I think I've said everything that I can think of saying. Have you enjoyed being here? Absolutely. We've enjoyed having you argue the case. Thank you so much. Thank you very much. Thank you. We will ask our excellent clerk to adjourn court. And then we'll come down and say hello to the lawyers. This honorable court stands adjourned. Sonny Dye, God save the United States and this honorable court. Thank you.
judges: Diana Gribbon Motz, Dennis W. Shedd, Stephanie D. Thacker